UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| NATALIE BENTON AND TOP ELECTRONICS INC.,<br><br>Plaintiffs,<br><br>v.<br><br>FORD MOTOR COMPANY; DCH FORD OF THOUSAND OAKS; AND DOES 1 through 10, inclusive,<br><br>Defendants. | No. 26-cv-2096 WBS SCR<br><br>ORDER AND MEMORANDUM GRANTING PLAINTIFFS' MOTION TO REMAND |

----oo0oo----

Plaintiffs Natalie Benton and Top Electronics Inc. filed an action in the Superior Court of the State of California, County of Ventura (Case No. 2024CUBC026383) alleging Song-Beverly Consumer Warranty Act claims and a fraudulent concealment claim against Ford Motor Company ("Ford"), and a negligent repair claim against DCH Ford of Thousand Oaks ("DCH"), Ford's authorized California dealership. (Compl. at 10-19 (Docket No. 1-2).) The claims arise from plaintiffs' purchase of a new 2018 Ford F-150,

which was repeatedly serviced at DCH for "transmission defects, engine defects, and electrical defects, among other nonconformities." (Docket No. 9-2 at 1.)

After the suit was filed, Ford petitioned to coordinate the action into Judicial Council Coordination Proceeding (JCCP") No. 5368, Ford F-150 Transmission Cases, in the Superior Court of California, County of Sacramento. (Docket No. 9-1 at 1.) Once coordinated, JCCP 5368 held an Initial Case Management Conference and issued a minute order directing plaintiffs to provide "(1) Identification of the specific repair alleged to have been negligently performed [by DCH] and relevant repair orders to be provided; (2) Identification of all negligent repair damages attributable to identified negligent repair [by DCH] and supporting documents" by May 29, 2026. (Id.) Plaintiffs did not provide the information to defendants by the deadline. (See Docket No. 9 at 2.)

On June 5, 2026, following the May 29, 2026 deadline, Ford filed a notice of removal before this court. (Docket No. 1.) Ford argues that by failing to respond to the JCCP's directive, plaintiffs "[abandoned]" their negligent repair claim against DCH, resulting in the fraudulent joinder of DCH, an undisputed citizen of California. (Docket No. 1 at 2-3.) Ford thus grounds removal on diversity jurisdiction under 28 U.S.C. § 1332(a) on the complete diversity of parties it deems properly joined: Ford, a citizen of Delaware and Michigan, and plaintiffs, citizens of California.[1] (Id. at 5.) On July 8, 2026,

---

[1] In its opposition to plaintiffs' motion to remand, Ford raises new grounds for removal under federal question

plaintiffs filed a motion to remand to JCCP No. 5368, Ford F-150 Transmission Cases, in the Superior Court of California, County of Sacramento. (Docket No. 9.)

I. Legal Standard

A defendant may remove "any civil action brought in a State court of which the district courts ... have original jurisdiction." 28 U.S.C. § 1441(a). Removal under diversity jurisdiction requires that each plaintiff be completely diverse from each defendant and that the amount in controversy exceeds $75,000, exclusive of interests and costs. See Grancare, LLC v. Thrower by & through Mills, 889 F.3d 543, 548 (9th Cir. 2018) (citing Caterpillar Inc. v. Lewis, 519 U.S. 61, 68, 117 (1996). No case may be removed from state court on diversity grounds one year "after commencement of the action." 28 U.S.C. § 1446(b); Caterpillar, 519 U.S. at 67.

Federal removal statutes are "strictly construed against removal," with the removing defendant bearing the "burden to establish that removal is proper and any doubt is resolved against removability." Luther v. Countrywide Home Loans Servicing LP, 533 F.3d 1031, 1034 (9th Cir. 2008) (citing Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir.1992).

II. Discussion

A. Timeliness of Removal

In its notice of removal, Ford argues an exception to the one-year bar to removal on diversity jurisdiction. (See

---

jurisdiction. (Docket No. 11.) This argument is untimely, and as will be discussed in Section II(B), will not be considered by the court.

Docket No. 1 at 3-4; 28 U.S.C. § 1446(c)(1).) Relying on the Ninth Circuit's decision in Roth v. CHA Hollywood Med. Ctr., L.P., Ford appears to argue that because plaintiff's complaint was initially "indeterminate" as to removability, it was not bound by either thirty-day removal time limit found within 28 U.S.C. § 1446(b)(1) and (b)(3). (Docket No. 1 at 3.) Instead, it was permitted to remove after its own internal investigation determined removability on May 30, 2026, the day after plaintiff's JCCP information directive deadline elapsed. (Docket No. 1 at 3); 720 F.3d 1121, 1125 (9th Cir. 2013).

There are generally "three intervals" relevant to removal. Iniquez v. Ford Motor Co., 2025 WL 1042712, at *2 (C.D. Cal. Mar. 21, 2025). The first two derive from 28 U.S.C. § 1446(b): A defendant must remove (1) "within 30 days after receiving ('through service or otherwise') an initial pleading that "set[s] forth" a basis for removal; or (2) 'if the case stated by the initial pleading is not removable,' within 30 days of receiving "an amended pleading, motion, order[,] or other paper from which it may be first ascertained that the case is one which is or has become removable." (Id. at *2; see 28 U.S.C. § 1446(b)(1), (b)(3).)

Third (3), a "defendant who has not lost the right to remove because of a failure to timely file a notice of removal under § 1446(b)(1) or (b)(3) may remove to federal court when it discovers, based on its own investigation, that a case is removable." Roth, 720 F.3d at 1123. But this scenario "presupposes that the defendant has not 'run afoul' of either 30-day deadline but has still discovered the basis for removal

within one year from the start of the case." Iniquez, 2025 WL 1042712, at *1 (quoting Roth, 720 F.3d at 1125) (emphasis added). Because neither thirty-day deadline was triggered under 28 U.S.C. § 1446(b)(1) or (b)(3), Ford's filing of the notice of removal twenty-three months after commencement of the action and pursuant to its own internal investigation was untimely. (See Docket No. 1.) On this basis alone, removal was improper.

For the foregoing reasons, the court is without subject matter jurisdiction to hear this case and will grant plaintiff's motion to remand on that ground.

B. Fraudulent Joinder

Even assuming that removal was timely, Ford fails to adequately show fraudulent joinder for removal purposes. Ford's notice of removal is grounded on a theory of plaintiffs' fraudulent joinder of DCH, a non-diverse California citizen. (Docket No. 1 at 5.) In determining whether removal is proper, district courts "may disregard the citizenship of a non-diverse defendant who has been fraudulently joined." Grancare, 889 F.3d 548 (citing Chesapeake & Ohio Ry. Co. v. Cockrell, 232 U.S. 146, 152 (1914).

There are two avenues by which defendants may allege fraudulent joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." Hunter v. Philip Morris USA, 582 F.3d 1039, 1044 (9th Cir. 2009) (quoting Smallwood v. Illinois Cent. RR. Co., 385 F.3d 568, 573 (5th Cir. 2004).

A defendant that removes on diversity of citizenship

and "on the basis of fraudulent joinder bears a 'heavy burden' since there is a 'general presumption against [finding] fraudulent joinder.'" Grancare, 889 F.3d at 548 (citations omitted). Here, defendant argues both fraudulent joinder theories.[2] (See Docket No. 1 at 5-6; Docket No. 11 at 8.)

Although the Ninth Circuit has not provided its definition of "actual fraud in the pleading of jurisdictional facts," other courts have required "a showing that plaintiff lied in the pleadings." Cifuentes v. Allstate Vehicle & Prop. Ins. Co., 2026 WL 25458, at *3 (W.D. Okla. Jan. 5, 2026) (quoting Sanelli v. Farmers Ins. Co., Inc., 2023 WL 3775177, at 2 (W.D. Okla. June 2, 2023).[3] Moreover, "actual fraud" can also occur where a plaintiff has joined a non-diverse defendant "'against whom no cause of action is stated' in order to prevent removal under a federal court's diversity jurisdiction." Brazell v. Waite, 525 F. App'x 878, 881 (10th Cir. 2013) (citing Dodd v. Fawcett Pubs., Inc., 329 F.2d 82, 85 (10th Cir.1964).

Here, Ford argues that plaintiffs' failure to specifically identify negligent repairs made by DCH constitutes

[2] Ford's "actual fraud" theory is only raised in its opposition to plaintiff's motion to remand and does not appear in its notice of removal.

[3] Despite Ford's contention that plaintiffs' attorneys serially file similar cases, an actual fraud showing will not be satisfied by mere allegations of "cookie-cutter complaints" or a high volume of similar cases filed by plaintiff's counsel. Cifuentes, 2026 WL 25458, at *3. Moreover, counsel for Ford's suggestion during oral argument that joinder of car dealerships in these cases is commonly found to be fraudulent does not comport with the experience of this court. Plaintiffs frequently properly join in-state car dealerships with plausible negligent repair claims. See e.g., Miranda v. FCA US, LLC, 497 F. Supp. 3d 880, 883 (E.D. Cal. 2020) (Shubb, J.); Lytle v. Ford Motor Co., 2018 WL 4793800, at 2 (E.D.Cal. Oct. 2, 2018) (Shubb, J.).

"maintaining incorrect statements to avoid federal jurisdiction." (Docket No. 11 at 8.) However, other district courts have consistently held that the strength of factual support for a cause of action is not the relevant inquiry for "actual fraud." See generally Bullard v. Allstate Vehicle & Prop. Ins. Co., 2026 WL 1243256, at *4 (W.D. Okla. May 5, 2026) (holding that defendant's alleged examples of actual fraud erroneously addressed "the merits of the underlying claims"); Cifuentes, 2026 WL 25458, at *3 (holding that failure to show how an insurance agent is involved an alleged scheme speaks to the merits, not actual fraud). Allegations of inadequate factual support concerning DCH's specific negligent repairs do not relate to a showing of actual fraud, but to the claims' merits. See Bullard, 2026 WL 1243256, at *4. Accordingly, Ford has failed to establish actual fraud sufficient for fraudulent joinder.

To establish fraudulent joinder under the second Grancare prong, the court must consider whether there is "a possibility that a state court would find that the complaint states a cause of action" against him. Edwards v. UPS, No. 2:24-CV-01283-KJM-DMC, 2024 WL 4132664 (Mueller, J.), at *4 (E.D. Cal. Sept. 10, 2024) (citing Grancare, 889 F.3d at 548 (citations omitted). This occurs when "it is abundantly obvious that [a plaintiff] could not possibly prevail" in his claim against the non-diverse defendant. Carrick v. Peloton Interactive, Inc., No. 24-00212, 2024 WL 3378332, at *4 (N.D. Cal. July 10, 2024) (citing Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1068 (9th Cir. 2001)). A colorable claim against the non-diverse defendant -- even that which would not survive a Rule 12(b)(6)

motion to dismiss -- is sufficient to defeat fraudulent joinder if it "can possibly be cured by granting the plaintiff leave to amend." Grancare, 119 F.3d at 549-550.

Here, Ford has not shown that plaintiffs' negligent repair claim "could not possibly prevail." Morris, 236 F.3d at 1068. To the contrary, plaintiffs' negligent repair claim remains pending in JCCP No. 5368, where the Superior Court has yet to act following plaintiffs' failure to meet its May 29, 2026 information directive deadline. Missing the deadline does not dispose of or otherwise adjudicate plaintiffs' facially viable claim, nor can it be said to constitute plaintiffs' "abandonment" of such a claim. (Docket No. 1 at 3.)

Grancare makes clear that even a claim which is dismissed under Federal Rule of Civil Procedure 12(b)(6) may still be amended or cured such that there is still a "possibility" it can prevail. (Id. at 549-50.) As plaintiffs acknowledge, while their failure to meet the JCCP's information directive deadline may give rise to adverse consequences, including sanctions, it does not follow that plaintiffs' claim has been abandoned or adjudicated against them wholesale. (Docket No. 9-1 at 4.)

Ford's argument that the economic loss doctrine bars plaintiffs' negligent repair claim does not change the analysis. (See Docket No. 11 at 5.) This court has repeatedly treated negligent repair claims in the context of fraudulent joinder. See Miranda v. FCA US, LLC, 497 F. Supp. 3d 880, 883 (E.D. Cal. 2020) (Shubb, J.) (finding that "every district court to consider [recovery against a dealership for negligent repair] has found

that such a claim is at least possible, regardless of the economic loss rule.") (quoting Ram v. FCA US LLC, No. 2:20-CV-00319 WBS CKD, 2020 WL 3178388, at *2 (E.D. Cal. June 15, 2020) (collecting cases); Cortez v. Nissan N. Am., Inc., 2024 WL 5054378, at *6 (C.D. Cal. Dec. 10, 2024) ("District courts in California 'have been virtually unanimous in rejecting. . . that a dealer is fraudulently joined because the economic loss rule bars a negligent repair claim.'") (quoting Andrade v. Ford Motor Co., 2023 WL 2586302, at *5 (S.D. Cal. Mar. 20, 2023)).

Ford next contends that the California Supreme Court's recent decision in Rattagan v. Uber Techs., Inc. forecloses any California state law negligent repair claim against DCH. 17 Cal. 5th 1 (2024). However, Rattagan held that "tort recovery for breach of a contract duty is generally barred unless the plaintiff shows the defendant's conduct violated an independent duty and caused injury to persons or property that was not reasonably contemplated by the parties when the contract was formed." Luera v. Ford Motor Co., No. 8:25-CV-01857-JDE, 2025 WL 2992483, at *3 (C.D. Cal. Oct. 23, 2025) (citing Rattagan, 17 Cal. 5th at 20-21). Post-Rattagan, district court decisions have held that a negligent repair claim based on an independent tort duty is facially valid and sufficient to overcome Grancare's impossibility standard. See, e.g., Luera, 2025 WL 2992483, at *3; Acosta v. Nissan N. Am., Inc., 2025 WL 2835462, at *2 (C.D. Cal. Oct. 6, 2025).

Ford argues that plaintiffs' negligent repair claim is solely derived from the DCH-provided warranty and falls within the boundaries of Rattagan. (Docket 11 at 7-8.) Plaintiffs,

however, argue that their negligent repair claim sounds in DCH's independent tort duty, rendering Rattagan inapposite (Docket 9 at 10; see Compl. (Docket No. 1-2 at 18).) It is sufficient for this court to conclude that even post-Rattagan, this remains a contested area of California law; it is not impossible for plaintiffs to prevail under the Grancare standard, especially considering their ability to cure their complaint if it is ultimately deemed deficient in state court. See Lytle v. Ford Motor Co., 2018 WL 4793800, at 2 (E.D.Cal. Oct. 2, 2018) (Shubb, J.) (finding that "California law is not so settled that a plaintiff could not possibly recover against a dealership for negligent repair of a vehicle.")

Even accepting, *arguendo*, Ford's position that the complaint does not currently allege negligent repair sounding in an independent tort duty, Ford has not shown that there is no possible amendment to plaintiff's complaint that would achieve this. (Docket No. 11 at 7-8.) Plaintiffs could plausibly amend their complaint to more precisely allege that the claim arises from DCH's independent tort duty. (Docket No. 9-2 at 4-5); see Compl. at 18. Ford has not "adequately demonstrated that the dealership [DCH] 'cannot be liable on any theory.'" Luera, 2025 WL 2992483, at *3 (quoting Acosta, 2025 WL 2835462, at *2).

C. Federal Question Jurisdiction

Ford's last-ditch attempt to deploy a new jurisdictional hook for removal in its papers opposing plaintiff's motion to remand is unavailing. (Docket No. 11 at 9.) Ford now argues that remand is inapposite because the complaint contained an allegation of a violation of federal law

under the Magnuson Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 et seq., providing a separate removal basis and conferring subject matter jurisdiction under federal question. (Id. at 9.)

Ford's argument is untimely, and the court will not consider it. The Ninth Circuit has held that defendants "must state the basis for removal jurisdiction in the petition for removal". . ."the petition cannot be amended to add a separate basis for removal jurisdiction after the thirty day period." O'Halloran v. Univ. of Washington, 856 F.2d 1375, 1381 (9th Cir. 1988) (citing Barrow Dev. Co. v. Fulton Ins. Co., 418 F.2d 316, 317 (9th Cir.1969). Moreover, Ford is not moving to amend its notice of removal (Docket No. 1) to cure a "defective allegation of jurisdiction;" rather, it is seeking to "add a new basis for removal jurisdiction" altogether. ARCO Env't Remediation, L.L.C. v. Dep't of Health & Env't Quality of Montana, 213 F.3d 1108, 1117 (9th Cir. 2000) (holding that amendment to add a new basis for removal jurisdiction is not permissible after the thirty-day period).

Other district courts have addressed this scenario squarely, finding that an attempt to shoehorn federal question jurisdiction as a novel basis for removal in opposition to a plaintiff's motion for remand is untimely and not to be considered. See SWC Inc. v. Elite Promo Inc., 234 F. Supp. 3d 1018, 1025 (N.D. Cal. 2017). Because Ford's argument concerning federal question jurisdiction is untimely, the court declines to address it.

D. Timeliness of Motion to Remand

Motions to remand "on the basis of any defect other

than lack of subject matter jurisdiction" must generally be brought within thirty days. 28 U.S.C. § 1447(c). But, as here, a motion to remand challenging the district court's subject matter jurisdiction to hear the case "may be raised at any time" before final judgment. Caterpillar, 519 U.S. at 69. Because plaintiffs move to remand on the basis that the court lacks subject matter jurisdiction, its motion is timely.

IT IS THEREFORE ORDERED that plaintiff's motion to remand (Docket No. 9) be, and the same thereby is, GRANTED, and this action is hereby REMANDED to JCCP No. 5368 in the Superior Court of California, County of Sacramento.

Dated: September 3, 2026

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE